## THE PEOPLE *vs.* IMLAY.

The act of April 8, 1851, relating to life insurance companies does not prohibit any citizen of this state from applying for insurance to a foreign company which has not complied with the act, on his own account; nor from doing so by his attorney ; nor from receiving the policy here, by mail, when issued in another state ; nor, as a consequence, from receiving it here through his attorney. But it prohibits the agent of a foreign company from making such delivery.

The act does not attempt to prevent a foreign insurance company which has failed to deposit the security required to be given by it, from insuring our citizens; nor does it impose a penalty upon an agent of such a company for acting for it, if he acts out of this state.

Signing a policy in Philadelphia, by an insurance company located and doing business there, and sending it to the applicant, or the attorney of the applicant, in New York, is not a violation of the statute.

The prohibition is expressly limited to the acting *within this state* as agent of a foreign insurance company. And the act only intended it to apply when the actual agency was in this state, and the thing done was actually done in this state.

It is not a violation of the act for a person in this state to act as attorney for an *applicant* to a foreign insurance company; provided the attorney is in good faith acting only as the attorney of the applicant, and not as the agent of the company, under cover of an attorneyship for the applicant.

The act of April 8, 1851, was not a violation of the article of the constitution of the United States by which the citizens of each state are entitled to all the privileges and immunities of citizens in the several states.

An incorporated company is not a *citizen*, within the meaning of that section. (*Const. art.* 1, *sec.* 1.)

The People *v.* Imlay.

MOTION by the defendant, for a new trial, upon a case. The people brought their action against the defendant, for a violation of the "act in relation to *all* insurance companies, transacting the business of life insurance within this state." (*Laws* 1851, *ch.* 95, *p.* 167.) The 3d section of the act relates to agents of foreign companies; placing them on the same basis as domestic companies, and is as follows : " It shall not be lawful for any person to act within this state, as agent or otherwise, in receiving or procuring application for insurance in, or in any manner to aid in transacting the insurance business of any company or association, not incorporated under the laws of this state, until he has procured a certificate from the comptroller, that the company or association, for which he acts, has complied with all the provisions of this act." On the 25th Sept. 1851, the defendant was secretary of the United States Insurance, Annuity and Trust Company, located at Philadelphia. This company did not comply with the act of 1851, by depositing $100,000 with the comptroller, as security for the policy-holders. At the time of the passage of this statute, this company were carrying on business in the city of New York, having their office in Nassau street. They had a sign, with the name of the company, over the door, which remained up when the policy in question was issued. It was alleged, on the part of the defendant, that this office was only kept open for the receipt of premiums on old policies, the defendant, as secretary, or Mr. Fisk, the actuary, remaining in charge of it ; but it appeared that applications for policies were made by four persons, at this office, which were received by the actuary of the company, and some of the policies were delivered to the parties by the defendant. The applications were received by Mr. Fisk, who pretended to act as the agent of the parties ; but it appeared he was, meanwhile, the actuary of the company ; did not receive any compensation from the applicants, was supplied by the company with printed powers of attorney in blank, indorsed on the applications for insurance, designed only to be used for this company. The defendant subscribed his name on the policy as the " secretary or agent authorized to receive premiums,"

---

The People *v.* Imlay.

---

was at the office of the company in New York on the day on which the receipt for the money purports to have been signed by him which was indorsed on Kendrick's policy. After the passage of the statute, the defendant proposed to Huntington, in reference to continuing the business, " to go on, law or no law," and declared that " he would go on, law or no law." It was proven, that the written part of the policy was in the hand-writing of the defendant, as also his signature as secretary, and that the defendant knew the residence of the party, and that the policy was to be delivered in the city of New York.

The cause was tried at the New York circuit, in April, 1853, before Justice EDMONDS and a jury.

A motion was made to dismiss the complaint, on the ground that the evidence did not sustain the charge, which motion was denied, and the defendant excepted. In order to charge the defendant with Fisk's acts, in respect to this policy, the plaintiffs proposed to give in evidence the acts of the defendant and Fisk in respect to four other policies to other persons. The evidence was objected to, admitted, and an exception taken by the defendant. At the close of the testimony the defendant asked the court to charge the jury, 1. That unless the jury found that the United States Insurance, Annuity and Trust Company did business as a Life Insurance Company in New York, on the 25th of Sept. 1851, the plaintiffs could not recover. 2. That unless the jury found that the defendant acted as secretary of said company in New York at that time, the plaintiffs could not recover. 3. That unless the jury found that while acting as such secretary, and for said company, he issued the policy in New York, in September, 1851, the plaintiffs could not recover. 4. That unless the jury found that the policy was issued by the defendant for a premium paid to him by Kendrick in New York, in September, 1851, the plaintiffs could not recover. 5. That unless the jury found that the defendant was, on the 25th of September, 1851, a resident agent in the city and county of New York of the said company, the plaintiffs could not recover. 6. That unless the jury should find that at the time the said company had an agency in the city of New York, the plaintiffs could not recover. 7. That

signing a policy in Philadelphia, and sending it to the applicant or attorney of the applicant in New York, was not a violation of the act of 1851. 8. That it was not a violation of the act of 1851, for a person in New York to act as attorney for an applicant to a foreign insurance company, in applying for insurance at the office of the company, in the foreign state. 9. That if the jury should find that the policy in question was signed by the defendant in Philadelphia, and there mailed to Mr. Fisk in New York, and when mailed was beyond the reach of the defendant, he was not liable in this action. The court refused to charge in any particular as requested, but charged as follows : " Our legislature passed a law in 1851, directing certain arrangements to be made by insurance companies. This company had an agency here before the law. The company did not make the deposit required by this law. Huntington testified that the defendant said 'he would go on, law or no law.' The question then is, whether he has gone on in violation of law. You must find this fact in order to convict the defendant. You must find whether this was or was not a contrivance to avoid the law. The question as to whether the receiving of premiums on old policies, is or is not a violation of the law, is not raised here." The judge here read to the jury the 3d section of the act under which the action was brought, and told the jury it was for them to decide the simple question whether the defendant had acted in this state in issuing the policy to Kendrick. " The defendant alleges he was bodily in Pennsylvania, and could not act here, although he might have sent the policies on. The whole of it is a question of fact for you to decide. If the defendant acted in this matter in good faith, you must find in his favor." The judge refused to charge upon the matters requested by the defendant's counsel, further or otherwise than he had already charged. The defendant's counsel excepted to the refusal of the judge to charge as requested, and in each particular as requested, and also to the judge's charge as given, in the following respects : in stating that the question was whether the defendant has gone on in violation of law ; whether there was or was not a contrivance to avoid the law ; whether the defendant had acted in this state in

issuing the policy to Kendrick, and that the whole of it was a question of fact for the jury to decide.

The jury found a verdict in favor of the plaintiffs, for $500.

*D. D. Field,* for the defendant. I. The act of 1851 is unconstitutional.

II. If the act be constitutional, its penalties attach only upon an agent established or situated in the county where the action is brought. (§ 9.) There was no pretense that the defendant was such an agent.

III. This being a penal action, great strictness in respect to the proof should have been insisted on, and the plaintiffs should have been required to prove the charge precisely as laid.

IV. The motion to dismiss the complaint should have been granted, there having been no evidence sufficient to warrant the jury in finding the allegations true.

V. The evidence respecting the other policies was improperly admitted; the result being, that the defendant was charged with one act and judged for another.

VI. The court ought to have charged as requested by the defendant's counsel.

VII. The charge was erroneous in the particulars excepted to. It led the jury away from the precise issues before them, into the general question, whether the defendant had violated the law, or entered into a contrivance to avoid it. It was not a question, whether the defendant had acted in good faith, or whether he and Mr. Fisk had engaged in a contrivance to avoid the law, or had violated it, but whether the defendant had done, in this state, the particular act charged against him in the complaint.

*A. Oakley Hall,* district attorney, for the people. I. The act, ch. 95, Laws 1851, is constitutional. It is the right of the legislature of every state to make regulations controlling individuals and corporations doing business within its limits. This act applies to all corporations, whether foreign or domestic, and applies the penalties in the only mode in which they could

The People *v.* Imlay.

be imposed, in order to prevent the evil sought to be guarded against. (1.) No doubt can exist, nor was the question suggested by the defendant's counsel at the circuit, as to the constitutionality of those provisions of the act which related to *domestic* companies. (2.) The state has the same right to regulate and prescribe the terms and conditions upon which all *foreign* companies may come into this state to transact business ; it may even prohibit them altogether, in the same manner in which it could prohibit a domestic company. It is as much the duty of the state to protect its citizens from imposition from the one, as it is from the other. " If irresponsible insurance companies may force themselves upon us in defiance of our laws, state sovereignty is but a name." (3.) Nor is it any objection, that the law is made to operate directly upon the agents themselves. The corporation is beyond our reach. The agent is the active instrument in accomplishing the illegal act; he is the willing instrument of the violation of the law. The exemption claimed by the defendant would give to the citizens of other states greater rights and privileges within our borders than are enjoyed by our own people. (*Bank of Augusta* v. *Earle,* 16 *Peters,* 519, 586. *The People* v. *Thurber,* 13 *Ill. R.* 564. 8 *How. U. S. R.* 490.) (4.) To be unconstitutional, a law must be *plainly and manifestly* in collision with some constitutional provision. (*Scott* v. *Stuart,* 1 *Mann. Mich. R.* 595. *Fletcher* v. *Peck,* 6 *Cranch,* 87, 122. *Calder* v. *Bull,* 3 *Dallas,* 386.)

II. The act is remedial. It was intended to provide a security for those effecting insurances, against the insolvency of the companies ; at the time of the passage of the act the evil existed to an alarming extent. Being a remedial statute, it should be construed largely and beneficially, so as to suppress the evil. Under the facts of this case we need only ask that the words be construed according to their fair import. (*Dwarris on Statutes,* 735.)

III. The defendant was an agent, within the fair import of the words of the act. (1.) The 7th section of the act of 1849, providing for the incorporation of insurance companies, (*Laws, p.* 441,) declares " the term agent or agents, used in this section,

shall include any acknowledged agent or surveyor, or any other person or persons who shall in any manner aid in transacting the insurance business of an insurance company not incorporated by the laws of this state." These acts are to be construed together, (*see* 10*th section of the act of* 1851,) and the 7th section of the act of 1849 remains in full force. (2.) Any person who shall aid in transacting the business, is made liable—it is not limited to resident or established agents. The bodily presence of the agent was not necessary; but it was left to the jury as a question of fact to say where the defendant was at the time the policy was issued. It was established by the evidence that the defendant had agreed to bring the policies with him to this city from Philadelphia, and that he was here on the day upon which the policy was delivered. (3.) The bodily presence of the defendant was not necessary. Even in criminal courts it is well settled that personal presence at the place where a crime is committed is not indispensable to make one a principal offender in its commission. An offense, consisting of several parts, is committed where the enterprise is consummated and took effect. The defendant was "situated," within the meaning and intent of the act, in this city; he was present by the instruments used by him to effect his purpose. (*People* v. *Adams,* 3 *Denio,* 190.) (4.) The law will not tolerate any contrivance or subterfuge to evade its provisions, and render it nugatory. The jury were instructed to find whether the course pursued by the defendant was a contrivance to avoid the law, and that if the defendant acted in good faith in the matter, he was not liable.

IV. The court, after reading to the jury the section of the statute, under which the action is brought, properly submitted it to the jury to find whether the defendant had acted in violation of its provisions.

V. The evidence as to the other policies was properly admitted. It was competent to show that the defendant did not act in good faith. Where the question of the intent of the party, in the particular transaction with which he is charged, is involved, cotemporaneous acts, similar to the offense charged, are compe-

tent to establish the *quo animo.* Such is the rule in cases of fraud, libel, slander, and in the criminal courts, where the *intent* with which the party acted in the particular transaction is the gist of the offense. (*Jackson* v. *Timmerman,* 12 *Wend.* 299. 1 *Phil. Ev.* 472, 475. 1 *Cow. & Hill's Notes,* 326, 328.)

VI. The charge was, in all respects, correct, and the plaintiffs are entitled to judgment upon the verdict.

*By the Court,* MITCHELL, P. J. This action was brought against the defendant under sections 3 and 9 of the act of 1851, ch. 95. The complaint alleged that the defendant, at the city of New York, on the 25th of Sept. 1851, acted as secretary of the United States Insurance, Annuity and Trust Company, the said company as such doing business as a life insurance company in said city, and that the defendant, while so acting, issued for said company for a premium *then and there* paid by one Kendrick, a policy of insurance on the life of Kendrick; and that the company had not deposited with the comptroller $50,000, and had not procured a certificate from the comptroller that the company had complied with the provisions of the law of 1851.

The evidence showed that such a policy was issued, at the date specified, by the above named company, and that the company had not complied with the law. That law makes it unlawful for any person to act *within this state,* as agent or otherwise, in receiving or procuring applications for insurance, or to *aid* in transacting the business of any company not incorporated under the laws of this state, until he has procured the certificate of the comptroller as above mentioned; and every violation of the act subjects the offender to a penalty of $500, to be recovered in the name of the people, by the district attorney of the county in which the company or the agent is "situated;" and in case of non-payment, the act declares the party offending shall be liable to imprisonment for a period not exceeding six months, in the discretion of any court having cognizance thereof.

When parties know what the law is and mean to violate it,

they endeavor to conceal their purpose by acting by indirect means. The plaintiffs' theory was that the defendant had arranged or conspired with Fisk, that they should procure insurances in the city of New York for the company, of which he was secretary, in violation of the law. The defendant, to meet this charge, endeavored to show that it was Fisk who acted in this city, and that Fisk acted, not for the company, but as the special attorney of persons applying to him. The question then was, with what object, what motive, were Fisk and the defendant acting. Was it with the object and motive of being the attorneys of the applicants, or with the object and motive of getting policies for this particular company. If the last were the motive, then in fact they were the agents of the company, although they should attempt to disguise it by taking special powers of attorney from each applicant. The plaintiffs accordingly proved that before the act of 1851 was passed, Huntington had been the agent of the company, and that he left the company because they would not comply with the law, and that the defendant, the secretary of the company, *proposed to him to go on, law or no law,* and he refused. That Fisk had been actuary of the company; that the company continued Fisk in their employ in an office in this city, of which they paid the rent, and continued his salary of $500 a year; that Fisk had blank forms ready for the appointment of a person as attorney, to be signed by applicants for insurance; and that he procured this policy and three others, but did not act as attorney for any one applying *to any other company;* that he received his salary, as above stated, from the company, but *no* compensation from the applicants. The proof that Fisk acted as attorney for a single individual would be very slight evidence that the acting as attorney was a cover, and that he was in reality the agent of the company; but if it could be proved that he acted in a hundred instances as such attorney, and always on policies to be issued by this company and by no other, it would be indisputable evidence that he was in fact the agent of the company. The proof that he so acted in other instances than that of Kendrick was admissible, although the proof is not as strong

as in the case supposed. The facts above stated showed such a connection between Fisk and Imlay, and such a purpose of Imlay to have some one to act as agent of the company, "law or no law," as to justify a jury in finding that Fisk was acting in combination with Imlay, or Imlay acting as agent of the company, through him. This was strengthened when it was shown that when Fisk went to Philadelphia Imlay took his place, and received the premiums in two or three other cases from the applicants in this city. If it had been proved that in 50 other cases he had thus received premiums in this city, the concert between him and Fisk that Fisk should act for him, or that both should be agents of the company, in this city, would have been clearly made out. In the case of Kendrick, Fisk received the money in this city and sent it on to Philadelphia and Imlay indorsed the policy acknowledging the receipt of the premium on the 19th or 25th of Sept. 1851.

The judge was requested to charge as follows, but refused:

1. That unless the company did business as a life insurance company in New York on the 25th of Sept. 1851, the plaintiff could not recover. This made the precise day material, and required that the company, and not the agent merely, should do the act in New York.

2. That unless the defendant acted as secretary of the company, in New York, at that time, the plaintiff could not recover. This made the time material, but was intended to have the court decide that as the complaint alleged that the defendant acted as *secretary* of the company, and while so acting issued the policy, the proof of his acting as secretary in New York was essential. The complaint would be complete if it omitted the description of the office of the defendant, and merely alleged that he issued the policy in this city for the company. The same answer may be made to the 3d request.

4. That unless the policy was issued *by the defendant* for a premium paid to him by Kendrick in New York, in Sept. 1851, the plaintiffs could not recover. This made the time material, and assumed that the defendant, if in New York, could not act by his partner or agent in New York.

5. That if the defendant was not a *resident* agent in the city of New York he was not liable. There is no such term as resident in the act. The word *situated*, as applied to agent in section 9, refers to the place where the agent is when he does the business or act complained of—the place which he makes his office for that business.

6. That unless the company had an *agency* in the city of New York, the plaintiffs could not recover. It was enough if the defendant acted as agent of the company, although the company had no person avowing himself the agent of the company, or no place belonging to it. This last would be the meaning of the terms used—an "agency" of the company.

7. That signing a policy in Philadelphia and sending it to the applicant, or the attorney of the applicant, in New York, is not a violation of the act of 1851. This probably was the question on which the case turned. The judge read the section of the act, and told the jury it was for them to decide whether the defendant had acted *in this state* in issuing the policy to Kendrick. This seems to have been a compliance with the plaintiffs' request to charge. But a majority of the court is of opinion that it was so indefinite that it left the jury under a mistake, when they ought to have been specially instructed as to the law, and allowed them to infer that if the defendant had no connection with Fisk, and issued the policy in Philadelphia, and in good faith sent it on from there to Kendrick or to Fisk, supposing Fisk to be the attorney of Kendrick and not the agent of the company, still the defendant would be liable, on the idea that his sending the policy to New York was acting here. The jury may possibly have been so misled, as the counsel for the plaintiff, at the trial, (as he did also on the argument at general term,) insisted that the last view of the law was correct, and that the defendant was liable although all he did was done in Philadelphia, if he sent on the policy from that city to this. There are cases in which one sending a letter or other instrument from another state into this state would be liable to the criminal law of this state. But these are not cases in which our law recognizes the act as lawful and valid if done in another

The People *v.* Imlay.

state, and only aims at its prohibition in this state. The act of 1851 does not mean or attempt to prevent an insurance company in Philadelphia from insuring our citizens; nor does it punish an agent of those companies for acting for them if he acts out of this state. It uses a marked and peculiar precaution in the choice of language to show its intent. It is, that "it shall not be lawful for any person to act *within this state* as agent or otherwise, in receiving applications for insurance, and to aid in transacting the insurance business of any company not incorporated under the laws of this state, until" &c. In most prohibitions of unlawful acts the prohibition is expressed in general terms; leaving to inference the intendment that the punishment is only intended for acts done in this state; but here the prohibition is expressly limited to acting *within this state* as agent; because the law only intended the prohibition when the actual agency was in this state, and the thing done was actually done in this state. It meant to allow our citizens to go to Philadelphia and get their policies effected there and mailed afterwards here. The evil was, acting as agent here, or effecting the insurance here. The latter was not done here, when the contract was completed in Philadelphia and was only mailed to this state. As soon as the proposal was accepted by the company, and the policy deposited in the mail, the contract was binding. After that, the forwarding of it to this place (if there were no agency here) was not procuring applications for insurance here, or aiding in the transaction of insurance business here; nor would its delivery here in such case, by one acting not for the company but for the applicant, constitute either of those prohibited acts. The act does not prohibit any of our citizens from applying for insurance to a foreign company on their own account; nor from doing so by an attorney of such citizen; nor from receiving the policy here, by mail, when effected abroad; nor, as a consequence, from so receiving it here through the attorney of such citizen; but it does prevent the agent of the company making such delivery; for that would be to "aid" in transacting the insurance business of such company. For this exception there must be a new trial; the costs to abide the event.

The People *v.* Imlay.

This last exception would be the only one necessary to decide, were it not that there are several other actions pending, under this law, and the decision of the court was desired as to all the points, so as to be a guide in the trial of those cases.

The 8th request was, to charge that it is not a violation of the act for a person in New York to act as attorney for an *applicant* to a foreign insurance company. The opinions before expressed are in favor of this proposition, provided the jury are satisfied that the person acting was in good faith acting only as the attorney of the applicant, and not as the agent of the company under cover of an attorneyship for the applicant. This was probably what was meant by the judge at the circuit.

The 9th request was that if the policy was signed by the defendant in Philadelphia, and there mailed to Fisk in New York, and when mailed was beyond the reach of the defendant, he is not liable. This would exempt the defendant even if the jury should conclude that the defendant was acting in concert with Fisk, or through Fisk as his agent. It was too broad, and it would have been wrong to have so charged.

It was argued that the act was in violation of the article of the constitution of the United States by which the citizens of each state are entitled to all privileges and immunities of citizens in the several states. An incorporated company is not a citizen, within the meaning of this section, (sec. 1, art. 1.) Such a company is a creation of the state which incorporates it, which has no power to legislate for other states, or to give to the artificial bodies which it creates powers to act in other states. Such companies act in other states than those which incorporate them, only by the comity of such other states. The act takes from no citizen of Pennsylvania any privilege which it allows to a citizen of New York. Neither can act as agent in the cases prohibited by the law. The 9th section of the act declares how the penalty shall be sued for, and then adds that in case of non-payment, the party offending shall be liable to imprisonment for a period not exceeding six months, in the discretion of any court having cognizance thereof. This latter clause seems to imply either that the non-payment would sub-

ject the offender to an indictment, in any court having cognizance of such offences, or to a *ca. sa.* in the suit in which the penalty might be recovered. The law, in either view of it, would be consistent with our state constitution.

For the single reason previously given, a new trial is granted; costs to abide the event.

[NEW YORK GENERAL TERM, May 7, 1855. *Mitchell, Clerke* and *Cowles,* Justices.]