By the Court, Monell, J.
The judiciary act of the United States provides for the removal into the Circuit Court of the United States, of an action brought in a state court, by a citizen of one state, against a citizen of another state, and the citizenship of the defendants is the only question to be determined in this case; which question must be decided upon the weight or preponderance of *369 judicial decision. It is not a new question which we can examine upon principle and determine by reason. It has engaged the attention of the courts, more or less for over half a century, and ought by this time to .be considered as settled.
I propose to examine the different decisions which have been made, and endeavor, as far as possible, to ascertain on»which side of the question the weight of decision lies, and determine this appeal accordingly.
Commencing with the 'earliest cases, (Strawbridge v. Curtiss, 3 Cranch, 267; The Hope Ins. Co. v. Boardman, 5 id. 57, and Bank of U. S. v. Deveaux, Id. 61,) we find the Supreme Court of the United States to have decided that a corporation aggregate cannot, in its corporate capacity, be a citizen. In the latter case Chief Justice Marshall used this language: “ That invisible, intangible, and artificial being, that mere legal entity, a corporation aggregate, is certainly not a citizen ; and consequently cannot sue or be sued in the courts of the United States, unless the rights of the members in this respect can be exercised in their corporate name. If the corporation be considered as a. mere faculty, and not as a company of individuals who in transacting their joint concerns may use a legal name, they must be excluded from the courts of the union.”
These cases were followed by Bank of Vicksburg v. Slocum, (14 Peters, 60,) where it was held that the artificial being, a corporation aggregate, was not, as such, a citizen of the United States, yet the courts of the United States would look beyond the mere corporate character, to the individuals of whom it was composed; and if they were citizens of a state different from that in which the party sued resided, they were competent to sue in the courts of the United States, but that all the corporators must be *370 citizens of a state different from that in which the party sued resided.
The next case in the federal court, is The Louisville Railroad Co. v. Letson, (2 How. 497,) where the question was very elaborately discussed and carefully examined. The action was brought by Letson against the railroad company, in the Circuit Court of the United States for the district of South Carolina. The defendants filed a plea to the jurisdiction of the court, to which plea there was a general demurrer. The objections raised to the jurisdiction were several, among them, and that is the only one necessary to notice, was, that a citizen of one state cannot sue a corporation in the Circuit Court of the United States in another state, unless all the members of the corporation sued are citizens of the state in which the suit is brought. The opinion of the court was delivered by Justice Wayne, and so much of the decision in Bank of Vicksburg v. Slocum, (supra,) as held that all the corpora-tors must be citizens of a state different from that in which the party sued resided, was overruled. That learned justice says: “A suit brought by a citizen of one state against a corporation by its corporate name, in the state of its locality, by which it was created, and where its business is done, by any of the corporators who are chosen to manage its affairs, is a suit, so far as jurisdiction is concerned, between citizens^ of the state where the suit is brought, and a citizen of another state. The corporators, as individuals, are not defendants in the suit, but they are parties having an interest in the result, and some of them being citizens of the state where the suit is. brought, jurisdiction attaches over the corporation, nor can we see how it can be defeated by some of the members who cannot be sued, residing in a different state.” And farther on, he says ; “ A corporation created by and doing business in a particular state, is to be deemed to all intents and pur *371 poses a person, although an artificial person, an inhabitant of the same state, for the purposes of its incorporation, capable of being treated as a citizen of that state, as much as a natural person.” The point, and the only point decided by this case, was, that the Circuit Court of the United States had jurisdiction in an action against a corporation in the state in which it was created, notwithstanding some of the corporators were not citizens of such state. As a decision, however, it is somewhat weakened by the want of unanimity in the court which made it. In the' subsequent case of Rundle v. Delaware and Raritan Canal Co., (14 How. 80,) two if not three of the judges entirely dissented. Two wrote opinions. Mr. Justice Daniel, in an able review of the cases, and particularly of the cases of Bank of the United States v. Deveaux, and of the Louisville and Cincinnati R. R. Co. v. Letson, and in an abler argument founded on reason and principle, entirely rejected the idea that a corporation was a citizen, within the meaning of the constitution of the United States or the act of congress, and after an elaborate and searching examination of the whole subject, came to these conclusions: “1st. That by no sound or reasonable interpretation, can a corporation—a mere faculty in law—be transformed into a citizen, or treated as a citizen. And' 2d. That the second section of the third article of the constitution, investing the courts of the United States with jurisdiction in controversies between citizens of different states, cannot be made to embrace controversies to which corporations and not citizens are parties, and that the assumption by these courts of jurisdiction in such cases, must involve a palpable infraction of the article and section just referred to.” Mr. Justice Catron, who also wrote an opinion, explained his understanding of. the Letson case; namely, that if the president and directors are citizens of the state where the corporation was. ere *372 ated, and the other party to the suit is a citizen of a different state, then the courts of the United States can exercise jurisdiction under the third article of the constitution.
The next case in order is Marshall v. Baltimore and Ohio Railroad Company, (16 How. 314,) which was brought in the Circuit Court of the United States for the district of' Maryland. The declaration alleged that the defendant “ is a body corporate by an act of the general assembly of Maryland.” Mr. Justice Grier, delivered the opinion of the court, fully sustaining and distinctly recognizing the Letson case as the settled law of the court. But here again three justices, (Catron, Daniel and Campbell,) dissented. Justice Catron said he had at all times denied that a corporation is a citizen within the sense of the constitution. Justices Daniel and Campbell each delivered elaborately prepared opinions. •
The question was again presented in The Covington Drawbridge Company v. Shepherd, (20 How. 227,) where the Letson case was again recognized as the settled law of the court. Justices Campbell and Daniel again dissenting.
The last case I am aware of, is Ohio and Mississippi Railroad Company v. Wheeler, (1 Black, 286,) which was brought in the Circuit Court of the United States for the district of Indiana. The plaintiffs were a corporation created by the •laws of the states of Indiana and Ohio. .Chief Justice Taney, after referring to the several decisions of the court, including and subsequent to the Letson case, says: “ After these successive decisions the law upon this subject must be regarded as settled; and a suit by or against a corporation in its corporate name, is a suit by or against citizens of the state which created it.”
In the Letson case, and in all the subsequent cases cited, except the last, the.court sustained the jurisdiction on the ground that a suit by or against a corporation in the state *373 where it received its corporate creation, was a suit by or against a citizen of that state. Leaving it perfectly clear, that the federal courts would exercise jurisdiction, if the action was pending in those courts. 0
There is, however, some diversity of decision in the state courts. The question has not often arisen. Against the jui’isdiction is a strong case in Pennsylvania, decided in 1860, (Wheeden v. Camden and Amboy Railroad Company, 1 Grant’s Cases, 420,) where the rule adopted in Bank of United States v. Deveaux, (ubi sup.) as explained by Justice Catron in the Bundle case, is recognized—namely, that the governing officers, by whatever name called, are.the substantial party; and if they are citizens of the state which created the corporation, and the other party is a citizen of another state, the federal courts have jurisdiction, and the cause is removable, under the judiciary act.
. The only case in this state which denies citizenship to corporations is Stevens v. Phenix Ins. Company, (24 How. Pr. 517,) a special term decision. While a very recent case in the second judicial district decided at general term, (Brooklyn Perry Company v. Norwich and New York Transportation Company, MS. opinion by Lott, J.) fully recognizes the rule as established in the Supreme Court of the United States. To this may be added Dennistoun v. N. Y. and N. H. Railroad Company, (1 Hilton, 62,) and Shelly v. Hoffman, (7 Ohio, N. S. 450,) which decide the same way. I am not aware of any other case bearing directly upon the question.
The array of cases which I have thus marshalled weigh heavily on the side of jurisdiction. In the federal courts, since the Letson case in 1844, the rule has been uniform and undisturbed; and in the state courts interrupted by only two decisions.
I have not criticised or commented on any of these cases, as I proposed in the outset, to discover if I could, on *374 which side of the question was the greatest number and weight of decision, and to be governed accordingly. Having examined the cases, I have come to the conclusion that the rule whi§h has been adopted in the federal courts, must be applied in this state, and that corporations for the purposes of jurisdiction, must be regarded as citizens of the state which created them.
It is however said, that inasmuch as the defendants’ corporation was created for the purpose of carrying freight and passengers by steamboats for hire, between the cities of Hew York and Hew Haven, and were the proprietors of a line of steamboats, which carried freight and passengers between those cities, having their agencies, docks, warehouses and" everything necessary to carrying on their said business, in the city of Hew York, the defendants were citizens of each or either state, and could not claim exclusive citizenship in one or the other. A natural person cannot claim citizenship in two places; and I cannot see how a mere artificial being can be made ubiquitous. In this sense domieü and citizenship are equi-n valent; and a person can have but one domicil. Heither does the transaction of a part of its business in another state, even where it is authorized by the laws of such other state, deprive a corporation of its citizenship in the state which ereated.it. This was involved and decided in each of the two cases in this state to which I have already referred. (Dennistoun v. N. Y. and N. H. Railroad Co. and Brooklyn Ferry Co. v. N. and N. Y. Trans. Co., supra.) And “having their principal place of business therein,” was recommended, as a sufficient averment to show citizenship in the state which created the corporation, in the case of Covington Drawbridge Company v. Shepherd, (sup. p. 234.)
The learned chief justice, in his opinion delivered at special term in this case,, seemed to understand that Wright, the defendants’ agent in this city, had been ap *375 pointed in pursuance of the laws of this state, (Sess. Laws 1855, chap. 279, p. 470,) requiring the designation of some person in each county where a foreign corporation transacts business, upon whom process may be served; and he argued that such appointment, for such a purpose, was an admission of citizenship in. this state for the purposes of the action. Without questioning the soundness of the con-. elusion, it is enough to say, that I do not find any evidence of such appointment. The statute referred to, requires the corporation tó file such designation in the office of the secretary of state, and an authenticated copy is made evidence,, and service on such designated person is lawful. The allegation in the plaintiffs’ papers is, that “ Wright is the general agent of the defendants at the city of Hew York,” and being informed of the intended suit, and requested to accept service of process, consented to do so. Ho such request or consent would have been necessary had Wright been the person designated under the statute, upon whom process might be served. Hence the point made by the learned chief justice, as was also made in Sterns v. Phenix Insurance Company, (sup.) is inapplicable and not supported by the facts of the case.
In conclusion, I am of opinion that the defendants are , entitled to an order removing the action into the Circuit Court of the United States, upon complying with the requirements of the judiciary act, and therefore concur in reversing the order appealed from.
Robertson, Ch. J.
The decision in the case of the Ohio and Mississippi R. R. Co. v. Wheeler, (1 Black, 286,) which escaped my attention when this case was before me at special term, has induced me to make a more thorough investigation of the authorities upon the question of the nature of the cases in which suits, brought in state courts, may be removed into the courts of the United *376 States, in order to reconcile their real or apparent diversity. If the' principle, claimed to have been laid down by the late eminent chief justice of the Supreme Court of the United States, (Taney,). in that case, as to the possibility of a corporation becoming a citizen of the state creating it, by force of that creation alone, be as applicable, under the judiciary act of the United States, (1 U. S. Stat. at Large, p. 78,) to suits brought in the state courts, as to those which may be brought originally in the United States courts, is to be understood as universally applicable, without any limitation or qualification, and was actually essential to the decision of that case, it must govern this. But I apprehend, on a close examination of the prior cases, cited and commented upon by him, as settling the law upon the subject, no such universal principle was decided, or was necessary for the decisions therein. Uor was it necessary for the decision of the case then before the court, or, if it were, it was not applicable to causes to be removed to, as well as those originally brought in, the United States courts.
The proposition laid down by Chief Justice Taney in the case just alluded to, in reference to corporations, is stated by him in these words: “ The law upon- this subject must be regarded as settled, and a suit by or against a corporation, in its corporate name, is a suit by or against citizens of the state which created it.” I have not been able to bring myself to believe that so learned and careful a judge could not have meant to go farther than to hold that such suit was to he presumed to he, or was prima facie, against citizens of the state creating the corporation, a presumption which, if unrebutted, would have been equally fatal to the jurisdiction of the federal courts in that case. The question there arose entirely upon the pleadings; and there was, therefore, no opportunity for raising any issue of fact; and it has long been settled law that the’ United *377 States courts, being of special jurisdiction, the'facts giving it must appear on the record. It appeared on the face of the declaration in that case, that a corporation chartered by the state of Indiana, was joined with a corporation chartered by the state of Ohio as plaintiffs, and that the defendant was a citizen of a different state from that in which he was sued.
The constitution of the United States declares that its judicial power shall extend “ to controversies * between citizens of different states.” (Art. 3, § 2.) The Federalist (No. 80) sustained the grant of that power by the argument, that it might “ be esteemed as the basis of the unit, that the citizens of each state" should “be entitled to the immunities and privileges of the citizens of the sevei’al states, and if it” wez-e “a just principle that every government ought to possess the means of executing its own provisions by its own authority, it” would “follow that, in order to the inviolable.maintenance of that equality of privileges and immunities, the national judiciary ought to preside in all cases in which .one state or its citizens” should be “ opposed to another state or its citizens.” This reasoning, by itself, would lead to the conclusion that the United States courts ought not only to have original jurisdiction, or be capable of acquiring jurisdiction in all cases of controversies between citizens of different states, but also to have sole jurisdiction of them, so as to exclude state courts from the exercise of any over them. If that were the true interpretation of such clause in the constitution, no act of congress has provided for its exercise. The judiciary act of 1789, (1 Stat. at Large, 78,) by its eleventh section, provides only for the exercise of concurrent jurisdiction with the courts of the several states by the circuit courts of the United States, of all civil suits “ between a citizen of the state where the suit is brought, and a citizen of another state.” And the twelfth section *378 . of the same act provides for the removal, by the defendant, of a suit commenced in a state court “by a citizen of the state in which the suit is brought, against a citizen of another state.”' But no provision is made for the removal of a cause by any plaintiff, or by a defendant, who is a citizen of the state in which the suit is brought. Such statute was undoubtedly intended to carry out the whole object of the constitutional provision, which was to secure an impartial tribunal, and enable a citizen of one state, who had been sued in another by a citizen of the latter, to free himself from the risk of any bias in favor of the party who belonged to the same state as the tribunal he had selected. The principle, too, has been constantly applied, from the earliest date to the latest, to the construction of both the constitution and the judiciary act, that the jurisdiction of the federal courts being specially defined for special purposes, nothing can be taken by implication, except for those purposes; so that a suit, in which the parties on each side - are not all citizens of a different state from that of all those on the other; in other words, unless each plaintiff could sue each defendant in a United States court, is either not a controversy between citizens of different states, within the meaning of the constitution, or else not within the judiciary act, a suit between a citizen of the state where the suit is brought and a citizen of another state, so as either to give a circuit court jurisdiction over it, or authorize its removal from a state court. (Strawbridge v. Curtis, 3 Cranch, 267. Cameron v. McRoberts, 3 Wheat. 591. North River Steamboat Co. v. Hoffman and others, 5 John. Ch. 300. Fairchild v. Durand, 8 Abb. 305. Prentiss v. Brennan, 2 Blatchf. C. C. 162. Denniston v. N. Y. and New Haven R. R. Co., 2 Abb. 278, 415. 1 Hilt. 62.) It was in the application of that rule alone that the court held, in The Ohio and Mississippi R. R. Co. v. Wheeler, (ubi sup.) that the plaintiffs being in cor *379 porated by the same name by two states, (Ohio and Indiana,) were to be considered in the light of citizens of those states severally, and that if both of them, as such, would not be citizens of different states from those' of which all the defendants were citizens, jurisdiction over it could not be maintained. There was nothing, therefore, in that case, or the reasoning contained or principles laid down in it, to require, as necessary to sustain the jurisdiction of the court, that the “ artificial faculty,” or “ invisible, intangible and artificial being” or “legal entity” known as a corporation, (per Marshall, Ch. J. Bank of U. S. v. Deveaux, 5 Cr. 61; Daniels, J. in Rundle v. Delaware and Rar. Canal Co., 14 How. 80,) consisting of a mere grant of a body of privileges to certain individuals, their successors or assigns, denied to the rest of the community, should, by the mere act of its creation, be rendered actually and absolutely a eitizen of the state which created it, within the meaning of the constitution and the judiciary act, and that too distinct from any citizenship of its corpora-tors, managers or officers. Such a doctrine, carried out, would not only enable a state to naturalize aliens, but give it the power of conferring upon the citizens of any other state the right to imjzlead citizens of their own state in the federal courts. And, as corporations may be made sole as well as aggregate, it would lead to the extraordinary, if not absurd i’esult, that any one might acquire from every state the privileges of a corporation, under a particular name. It would then depend upon the mere form of the transaction out of which a cause of action arose, and the name in which it was conducted, whether courts of the United States would have jurisdiction or not. It is a pure legal fiction, that the grant by the legislature of a state for a definite time, or forever, to particular individuals and their assigns, or those who succeed to their lights, of an aggregate of privileges denied to the x’est of *380 the community, such as that of suing and being sued by a particular name, holding and taking property by that name, having a common seal and the like, creates a new-legal entity, designated as an artificial person. To indue which with rights of citizenship apart from those of the persons upon whom such privileges are conferred, and in whom they are vested, would be a great stretch of imagination. I do not understand that the constitution of the United States' was ever designed to recognize such abstractions. It was framed to regulate the rights, powers and duties of living persons alone forming the people of the United States, in whose name it speaks, who were already the citizens of different states or capable of becoming so. As was well observed in the opinion of the court in the case of The People v. Imlay, (20 Barb. 80,) in reference to the second section of the next article (fourth) which secures to citizens of each state the privileges and immunities of citizens of the several states, “An incorporated company is not a citizen within the meaning of this section. Such a company is a creation of the state which incorporates it, which has no power to legislate for other states, or to give to the artificial bodies which it creates powers to act in other states. Such companies act in other states than those which incorporate them, only by the comity of such other states.” The same reasoning is equally applicaple to the second section of the third article, and to the recognition of the right of corporations to sue by their corporate name in courts of the United States. For that depends either upon the provision of the judiciary act adopting the previous practice of state courts, or a practice established by the courts of the United States to that effect, growing out of comitj'- and a desire to assimilate the practice of tribunals created under state and United states authorities, where feasible and not conflicting with other provisions of law.
I cannot, therefore, believe that the learned and vene *381 rated chief justice intended, in the case already referred to, (Ohio and Miss. R. R. Co. v. Wheeler, ubi supra,) abrubtly to adopt as an original doctrine so startling a principle, and recognize in the states such an anomalous power of conferring jurisdiction on the United States courts by a grant of privileges to the citizens of other states, without ' furnishing some cogent reasoning to sustain the doctrine, aimed directly at the objections to it, or sustained by an analysis of previous decisions to show a previous sanction of it.
An analysis of the cases previous to that last referred to, will show that while consistent with the idea that upon.a question of jurisdiction of the United States courts, a corporation created by a state may be prima facie assumed to consist entirely of corporators who are citizens of that state, they do not sustain the view, that such corporation is absolutely' and de facto a citizen of that state, within the meaning of the constitution and the judiciary act, without regard to the state or country of which its corporators may be citizens or subjects. Nor does the language of Chief Justice Taney in the case alluded to, go to that extent, for he merely says “ that a- suit by or against a corporation in its corporate name, is a suit by or against citizens of the state which created it.” This is peculiarly and carefully w orded, and in view of his usually nervous and direct diction, could hardly have been intended as a periphrasis to convey the idea that “ every corporation is absolutely a citizen of the state that creates it, within the meaning of the constitution and the.judiciary act.” The introduction of the words “prima facie ” or “presumptively ” after the word “is,” relieves the proposition from all ambiguity, and makes it what it was intended to be. The decision at special term in the recent case of The Brooklyn Ferry Company v. The Norwich and New York Transportation Company, (supra,) in the Supreme Court of this state, in the second district, *382 somewhat corresponded with such a view, but was overruled at a general term of the same court. The learned judge, however, who delivered the opinion of the court for raising such decision on that occasion, (Lott, J.) while he conceded therein that the rule, as stated, was founded upon a presumption, held that it was one of law and not of fact, and therefore conclusive. That would bring it back to a simple positive declaration. Ko ground for raising such conclusive presumption is to 'be found in any thing contained in the constitution of the United States, or any relation between the federal government, or any department thereof and the states or any department of their goverment or the people thereof. And it ■ certainly is not based upon any long continued or wide spread usage of the legislatures of the states, limiting the corporators of a corporation to citizens of the state which created it, to warrant its judicial adoption by a court. Such opinion relied upon the fact therein stated, that evidence to repel such presumption was excluded in the case of the Louisville Cin. and Charleston R. R. Co. v. Letson, (2 How. U. S. 497.) It appears to me, however, that the learned judge who delivered that opinion was mistaken in such view. That case came up entirely upon an issue of law, by a demurrer to a plea to the jurisdiction. One objection taken by the defendants’ counsel, it is true, was that a citizen of one state cannot sue a-corporation in a Circuit Court of the United States in another state, unless all of the members of the corporation sued are citizens of the state in which the suit is brought, meaning, doubtless, thereby “ appear hy the record to he such citizens,” for that was all- the question which could be raised on demurrer. That case overruled a dictum in the previous case of The Bank of Vicksburgh v. Slocum, (14 Pet. 60,) not necessary to its decision, that all the corporators, in a suit hy a corporation, must he citizens of a different state from that of the *383 party sued, but only so far as regarded corporators who were not in reality parties to the suit. Justice Wayne, who delivered the opinion of the court in the first case, (Louisville R. R. Co. v. Letson,) says: “A suit brought by a citizen of one state against a corporation by its corporate name in the state of its locality where it was created, and where its business is done, by any (qu. some) of the corporators who are chosen to manage its affairs,” is a suit, so far as jurisdiction is concerned, between citizens of the state where the suit is brought and citizens of another state. The corporators as individuals are not defendants in the suit, but they are parties having an interest in the result, and some of them, (i. e. the managers,) being citizens of the state where the suit is brought, jurisdiction attaches over the corporation. Uor can we see how it can be defeated by some of the members,” (i. e. not managers,) “ who cannot be sued, residing in a different state.” That learned jurist undoubtedly meant by the last phrase, members resident in the same state with some of the adverse parties, which would-be necessary to defeat the jurisdiction. In the business of a corporation being done in the state where it was created, by his allusion to “ corporators chosen to manage the affairs of the corporation,” he undoubtedly meant those who were citizens of the state by which the corporation was created as they conducted its business there; otherwise the allusion to such management was entirely unnecessary, and he might as well have stopped at the fact of the mere creation. He evidently argued .that a state might and was presumed to vest all the property or right of controlling it, and the right of contracting either of a corporation or an individual citizen of such state, as trustees, who would necessarily be the real parties in every suit by or against them, respecting the subject of the trust, while the cestuis que trust, although interested in the result, need not be parties to such suit. (Story on the Const. § 1695.) He undoubtedly considered *384 the persons hy whom such affairs were to be managed, as virtually the trustees and only parties to the record in any suit respecting the liabilities or rights of the corporation, so far as jurisdiction depended on the citizenship of parties, as in the case of executors and administrators. (Chappedelaine v. Cheveaux, 4 Cr. 306. U. S. Bank v. Deveaux, ubi sup. Chedress v. Emory, 8 Wharton, 668.) Such was the interpretation put in a subsequent case, (Rundle v. Delaware and Raritan Canal Company, 14 How. U. S. 80,) upon the decision in that case by one of the very justices who took, part in it, (Catron, J.) who explained it to mean that courts of the United States could exercise jurisdiction over cases where a president and directors of a company which is a party to a suit, (being the parties managing its business,) are citizens of the state by whom it was incorporated and the other party is a citizen of a different state, while in a subsequent ease, (Marshall v. Baltimore and Ohio Railroad Company, 16 How. 314,) sustaining that same decision, he took occasion to say that he had always denied that a corporation was a citizen within the meaning of the constitution. In the same case of Bundle v. Delaware and Raritan Canal Company, (ubi sup.) Justice Daniel came to the same conclusion,- after a thorough review of all the authorities and a forcible presentation of the reasons leading to that result. But in that case he went further, and insisted that a United States court could have no jurisdiction where a corporation was a party, meaning of course when composed of citizens of different states. This of course would go too far the other way, as it would not only deprive the representatives of a corporation of availing themselves of a federal court, but shield them from being reached by it. Besides the cases of Marshall v.' Baltimore and Ohio Railroad Company, (16 How. 314,) in which Justices Daniel and Campbell delivered elaborate dissenting opinions, the doctrine laid down in the case of *385 the Louisville Railroad Company, v. Letson, (ubi sup.) was followed in the case of the Covington Drawbridge Company v. Shepherd, (20 Row. U. S. 227.) In none of those cases, however, is the principle maintained that a corporation can be a citizen within the meaning of the constitution of the United States.'; nor is any answer put forth in any case to the able argument of Justice Daniel against it in the case of Rundle v. Delaware and Raritan Canal Company, (ubi sup.) I feel fully satisfied, therefore, that the learned chief justice in the case first cited, of The Ohio and Mississippi Railroad Company v. Wheeler, (ubi sup.) did not mean to go beyond where the previous eases reversed by him therein, had gone, of sustaining the views of Justice Waynein the case of The Louisville Railroad Company v. Letson, (ubi sup.) to wit, that in a suit to which a corporation, managed and controled by some of its corporators as officers, who-were citizens of the state by which it was created was a nominal party, such managers were the real parties, and the other corporators whose interest they represented were not parties at all, although interested in the result, and that their citizenship in a different state from that creating such corporation had no effect on the jurisdiction of the United States courts over the parties. This would admit of evidence to show that the managers or representatives of the corporation were citizens of a different state from that which created it, and if in this case they resided in this state, of course the action could not be removed to the federal court.
The petition in this case for removal showed not only that the defendants were incorporated by the state of Connecticut, but that the meetings of their corporators take place in that state, and their governing power issues their orders therefrom. There was nothing presented in opposition, to show that any of their officers or even corpora-tors were citizens of this state so as to take the case out *386 of the twelfth section of the judiciary act. I therefore now consider it a case for removal. If I were still satisfied that the decisions in The Ohio and Mississippi Railroad Company v. Wheeler, and Lousville Railroad Company v. Letson, went so far as to declare that a corporation could he a citizen of a state distinct from that of which its corporators were citizens, I should be inclined to avoid what appears to me a monstrous proposition, that its mere creation made it, without any thing else, forever a citizen of the state creating it, by adhering to the qualification apparently laid down by Justice Wayne in the latter case as to residence, and sustained by Justice Allen in Stevens v. Phenix Fire Insurance Company, (24 How. 517,) and which I adopted in the opinion given by me at special term. As it is, I am satisfied the order refusing to allow a removal should be reversed, without costs.