COLUMBIA FIRE INSURANCE COMPANY v. DAVID P.
KINYON.

| 37 | 33 |
| 68 | 70 |
| 37 | 33 |
| 69 | 274 |

1. A contract of insurance made out of this state on property here situated, is valid, and will be enforced here.
2. Although it would be competent, by legislation, to invalidate in our courts an insurance contract made in good faith in another state on property located here, it would be so contrary to the comity which has been observed between the states, that such an intention will not be imputed to the law maker, unless the language used so clearly expresses that purpose as to bear no other reasonable interpretation.
3. The regulations of our insurance laws are not merely for the purpose of revenue—they impair the contract made in violation of them, so far, at least, as concerns the right of the foreign corporation to sue upon it. Whether public policy requires that the party insured shall be permitted to enforce the agreement, is not decided.
4. The declaration is defective, in that it does not show that when the assessment was made upon the deposit note, the defendant was a member of the company, and, as such, liable to assessment; nor does it show that the losses assessed accrued while the defendant's policy was alive, or that the assessment was made on the basis authorized by the corporation act. If the policy had expired, the defendant could not be held without alleging that the loss accrued before its expiration. If the policy was alive, the losses must have occurred while it was in force.

On demurrer to replication.

Argued at November Term, 1873, before the CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and WOODHULL.

For the plaintiff, *J. G. Shipman.*

For the defendant, *Bird.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This suit was brought by the Columbia Fire Insurance Company, a foreign corporation, chartered by the state of Pennsylvania, to recover the amount of certain alleged assessments made on the deposit or premium note

given by the defendant for his policy. The principal question is as to the force of our acts of 1860 and 1867, concerning insurance companies.

The fourth plea avers that the policy of insurance and the premium notes were made and delivered at Raritan, in this state, contrary to the act of our legislature, entitled "an act to regulate the business of fire insurance companies, or associations not incorporated by this state," approved March 19th, 1860, and also to the act entitled "an act to regulate the business of fire, life, accident, marine, and live stock insurance, by companies or associations not incorporated by this state," approved April 19th, 1867.

To this plea the plaintiff replied, that they did not make and execute the policy, and take the premium note at Raritan, in this state, but that the same were made, executed, and delivered at Columbia, in the state of Pennsylvania, and thereupon the defendant demurred to this replication.

The demurrer admitting all the facts well pleaded in the replication, raises the question, whether this contract of insurance, made in Pennsylvania, can be enforced here.

It is the evident purpose of the acts of 1860 and 1867, to put under certain regulations the doing of business in this state by foreign insurance companies. This object is accomplished by prescribing the conditions upon which they may effect insurances through agencies established here. No intention is manifested of an attempt to restrain or control the business of these corporations, so far as it is transacted without the limits of this state, or to give our legislation any extra territorial effect.

Comity requires us to enforce a contract made in another state, and valid there, unless it is clearly prohibited by some provision of these enactments.

The defendant insists that this restraint is found in the first section of the act of 1860, which provides, "that it shall not be lawful for any company chartered by another state, to transact any business connected with insuring property situated in this state," &c. Even if this section is not superseded

by the act of 1867, it must, in connection with the subsequent provisions, be construed to inhibit any foreign company from transacting any business connected with insuring property situated in this state, through agencies established here, without conforming to the requirements of our laws. That this is the fair construction of the act, is manifest from its second section, which authorizes the Secretary of State, after the foreign company has complied with its terms, to issue a certificate of authority not to enable the company to make a contract out of this state to insure property here located, but to allow an agency to be established in the county where applied for, to transact business in this state. It is also to be observed, that the penalties denounced by the act are aimed only at the unauthorized agent acting within this state.

Corporations are artificial beings, the creatures of positive law, and not citizens within the meaning of that clause of the federal constitution, which secures to the citizens of each state " like privileges and immunities with the citizens of the several states." It may, therefore, be conceded, not only that our legislature may put under restraint business transacted in this state by a company created by the law of another state, but, in the exercise of their plenary power, may limit, if they cannot deny, the right of such company to sue in our courts. Although it would be competent, by legislation, to invalidate in our courts an insurance contract made in good faith in another state on property located here, it would be so contrary to the comity which has been observed between the states, that such an intention will not be imputed to the law maker, unless the language used so clearly expresses that purpose as to bear no other reasonable interpretation. There is nothing in our laws, except the clause above cited, to countenance, in the slightest degree, such a disposition on the part of our legislature ; and the language there used will not only bear another construction, but it was omitted from the later act of 1867, which repeals all inconsistent legislation.

It is argued that, under the rule now adopted, agencies established here may evade our laws by the simple device of

concluding their contracts out of the state. If our laws were otherwise so impotent as to permit such palpable evasion to pass unpunished, it would be clearly within the reach of the first section of the act of 1850.

The following cases support the rule that, where the policy is issued and the insurance effected in the foreign state, on property situated in another state, whose laws render it void if made there, the contract is valid and enforceable by either party. *Hyde* v. *Goodnow*, 3 *Comst.* 267 ; *People* v. *Imlay*, 20 *Barb.* 68 ; *Huntly* v. *Merrill*, 32 *Barb.* 627 ; *Williams* v. *Cheney*, 3 *Gray* 215.

Hyde *v.* Goodnow was a suit in New York, upon a deposit note, given for an insurance effected in New York on property situated in Ohio. The Ohio statute declared void every policy signed, issued or delivered in that state, or on any property of any kind situate in that state, by any foreign company, except through a duly licensed agent. The Court of Appeals held that the contract was not made in Ohio, and therefore was not within the prohibition of this statute. It is not to be presumed that the court overlooked the words " or on any property of any kind situate in that state," contained in the Ohio statute.

In the later case of The People *v.* Imlay, the defendant set up that the contract was in contravention of the statute of New York concerning foreign insurance companies, but the defence failed, on the ground that the contract was made in Pennsylvania, and being valid there, would be enforced in New York.

There is nothing in our statute which will make this case an exception to the general rule, that the law of the place where a contract is made or to be performed, is to govern as to the nature, validity, construction and effect of such contract ; being valid in such a place, it is to be considered equally valid everywhere. It will be enforced here, not *proprio vigore*, but *ex comitate*.

My conclusion is, that a contract of insurance made out of this state, on property here situate, is valid.

The regulations of our insurance laws are not merely for the purpose of revenue, leaving unimpaired the contract made in violation of them.

The act of April 15th, 1846, imposes a tax upon foreign companies which establish agencies in this state, the principal object of which, as stated in the preamble, was to deprive them of the advantage they would otherwise have over our home corporations.

The subsequent acts of 1860 and 1867, manifest very clearly the more important purpose of protecting the public against imposition, which might otherwise be practised by wholly irresponsible companies, by requiring that the foreign companies shall exhibit under oath, and file with our Secretary of State a statement, showing that they are possessed of a sound, well invested capital of at least $150,000, over and above all claims and liabilities, before authority can be had to appoint agents. The raising of revenue by the imposition of a tax, is merely incidental.

The agent, therefore, who acts without due authority, is not only liable to the penalty in such case prescribed, but the contract made in contravention of the law is itself void, so far as concerns the right of the foreign principal to sue upon it. *Washington County Ins. Co.* v. *Dawes*, 6 *Gray* 376 ; *Williams* v. *Cheney*, 8 *Gray* 206.

In such cases it may be required by public policy, that the party insured shall be permitted to enforce the agreement, but no opinion is expressed on this point.

The objection that in the replication there is a departure in pleading, is not well taken. The place laid in the declaration was merely formal. The demurrer to the replication reaches back in its effect through the whole record, and attaches ultimately to the first substantial defect in the pleadings. Under this rule the sufficiency of the declaration has been made the subject matter of discussion—

1. The declaration alleges that the members of the corporation are to be assessed on the premium notes to pay the losses. It recites that the defendant became a member in March,

1867, and became insured for a large amount, without specifying the sum for which he was insured, or the time the policy was to run. There is nothing in the pleading to show that when the assessment was made the defendant was a member of the corporation, and, as such, liable to assessment.

2. It is further averred that every member is bound to pay losses and necessary expenses in proportion to the amount of his deposit note. The amount of losses and expenses for which the deposit notes were assessed, is not stated—in fact, it is not directly set forth that any losses were incurred, nor is the aggregate amount of the deposit notes shown. There is no sufficient allegation by which it can be determined whether the sum demanded by the plaintiff is according to the terms of the contract. The action being *ex contractu* for a specific, liquidated sum, there must be such a statement of facts as will show a right to recover the amount claimed. The allegation is, that the company, in January, 1870, made an assessment of seven and a-half per cent. on the original amount of all premium notes held by the company and in force on the 27th day of November, 1869, and by such assessment assessed upon the premium note of the defendant the sum of $75 for the purpose of paying losses incurred by the company by damage by fire. The assessment was laid to pay losses, but the pleader has wholly failed to state whether the sum assessed was less, greater, or precisely equal to the amount of losses, or whether they were such losses as accrued while defendant was a member of the company, and for which he would be liable. The legal right to assess the defendant must be clear on the face of the declaration. If the policy had expired, the defendant could not be held without alleging that the loss accrued before its expiration. If the policy was alive, the losses must have occurred while it was in force. *Long Pond Ins. Co.* v. *Houghton*, 6 *Gray* 77 ; *Savage* v. *Medbury*, 19 *N. Y.* 32.

It does not, therefore, appear that the assessment was laid upon the basis authorized by the corporation act.

These are substantial infirmities in the declaration, and, therefore, in my opinion, there should be judgment for the defendant.

The CHIEF JUSTICE, and Justices DEPUE and WOODHULL concurred.